1  SHARON VINICK, ESQ., State Bar No.129914
   LEVY VINICK BURRELL HYAMS LLP
2  WENDY MUSELL, ESQ., State Bar No. 203507
   BRITTANY WIGHTMAN SHAMMA, ESQ., State Bar No. 341838
3  LAW OFFICES OF WENDY MUSELL
4  180 Grand Avenue, Suite 1300
   Oakland, CA 94612
5  Tel.: (510) 318-7700
   Fax: (510) 318-7701
6  E-Mail: sharon@levyvinick.com
   E-Mail: wmusell@wendymuselllaw.com
7  E-Mail: bshamma@wendymuselllaw.com
8
   Attorneys for Plaintiffs
9  EMILIO MEDRANO and ANTONIO MOLINA

10                  UNITED STATES DISTRICT COURT
11                 NORTHERN DISTRICT OF CALIFORNIA
12

13 | EMILIO MEDRANO and ANTONIO | Case No. 3:22-cv-09134-SK
14 | MOLINA, |
   |       Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
15 |
16 |       v. | **DEMAND FOR JURY TRIAL**
17 | MARRIOTT INTERNATIONAL, RITZ- | 1. **Discrimination: Fair Employment and Housing Act (Cal. Govt. Code §§ 12940, et seq.)**
   | CARLTON HOTEL CO LLC dba RITZ- |
18 | CARLTON HALF MOON BAY, and DOES | 2. **Harassment: Fair Employment and Housing Act (Cal. Govt. Code §§ 12940, et seq.)**
   | 1-10, inclusive, |
19 |                Defendants. | 3. **Failure to Prevent Discrimination and Harassment: Fair Employment and Housing Act (Cal. Govt. Code §§ 12940, et seq.);**
20 |
21 |
22 | | 4. **Retaliation: Fair Employment and Housing Act (Cal. Govt. Code §§ 12940, et seq.); and**
23 | | 5. **Retaliation: California Labor Code § 1102.5;**
24 | | 6. **Rest Break Violations (Wage Order 5 § 12(A));**
25 | | 7. **Meal Break Violations (Wage Order 5 § 12(B));**
26 | | 8. **Unfair Business Practices (Cal. Bus. & Prof. Code § 17200**
27
28

1

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

**INTRODUCTION**

2      1.     PLAINTIFFS Antonio Molina and Emilio Medrano (hereinafter "Mr. Medrano," "Mr.

3  Molina," or "PLAINTIFFS"), were employed by DEFENDANTS Ritz-Carlton Half Moon Bay, a

4  Marriott International hotel, (hereinafter "the Ritz," or "DEFENDANTS") and file the instant action

5  for violations of the Fair Employment and Housing Act, including race, age, and national origin based

6  discrimination; race, age, and national origin based harassment; retaliation; failure to prevent

7  discrimination, harassment, and retaliation; and violations of California Labor Code § 1102.5.

8

**PARTIES**

9      2.     Mr. Molina is a Latino man over the age of forty (40), and a California resident.  He

10  was hired by DEFENDANT in 2001.

11      3.     Mr. Medrano is a Latino man over the age of forty (40), and a California resident.  He

12  was hired by DEFENDANT in 2010.

13      4.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT employs

14  more than five employees in California, within the meaning of the Fair Employment and Housing Act

15  ("FEHA"), California Government Code § 12926(d).  DEFENDANT is a covered entity or employer

16  within the meaning of the FEHA.

17      5.     DEFENDANT Marriott International, located in Bethesda, Maryland, is doing business

18  as Ritz-Carlton Half Moon Bay in San Mateo County, California.

19      6.     DEFENDANT RITZ-CARLTON HOTEL COMPANY L.L.C. dba RITZ-CARLTON

20  HALF MOON BAY, is a joint employer of Plaintiffs with DEFENDANT Marriott International.

21      7.     During the times alleged herein, Mr. Chris Ciana (hereinafter "CIANA"), was an

22  employee of DEFENDANTS, serving in the capacity of Manager and later Director of the Banquets

23  Department, and was PLAINTIFFS' direct supervisor. During all relevant times, CIANA was a

24  supervisor, as defined by California Government Code § 12926(t), with DEFENDANTS, where

25  PLAINTIFFS were employed. CIANA had the authority to hire, transfer, promote, assign, reward,

26  discipline, and discharge PLAINTIFFS. DEFENDANTS are therefore strictly liable for the actions of

27  CIANA.

28      8.     At all times relevant, PLAINTIFFS are informed and believe and thereon allege that

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

CIANA was an agent, employee, and/or servant of DEFENDANTS and performed acts complained herein in the course and scope of such agency, employment, and/or servitude and acted with the consent, ratification, permission, knowledge, and/or authorization of DEFENDANTS. All of DEFENDANTS' acts and/or conduct alleged in the claims into which this paragraph is incorporated by reference were consented to, ratified, approved, and/or authorized by the officers and/or managing agents of DEFENDANTS. DEFENDANTS are sued in their own right and on the basis of respondeat superior.

9.      In addition to the Defendants named above, Plaintiffs sue Defendants Does 1 through 10, inclusive, pursuant to Code of Civil Procedure § 474, because their names, capacities, status or facts showing them to be liable are not presently known.  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that such Defendants caused Plaintiffs' damages as herein alleged. Plaintiffs will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

10.      Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all times relevant herein the agent, servant, employee, and/or representative of the other Defendants and was acting, at least in part, within the course and scope of such relationship and that each and every Defendant herein is jointly and severally responsible and liable to Plaintiffs for the damages hereinafter alleged.

## VENUE AND JURISDICTION

11.      PLAINTIFFS bring this Complaint for violations of the California Government Code and California Labor Code, and the amount in controversy exceeds the minimum required by this Court. Accordingly, this Court has jurisdiction over the claims in this matter.

12.      Pursuant to Article VI, § 10 of the California Constitution, subject matter jurisdiction is proper in the Superior Court of California, County of San Mateo, State of California.

13.      Pursuant to § 12965(b) of the California Government Code, venue is proper in the Superior Court of California for the County of San Mateo, State of California, because this is where PLAINTIFFS were employed; where DEFENDANT operates its business; and where all incidents

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  alleged herein took place.

2  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

3  14.     In accordance with the appropriate regulations, codes, and statutes, PLAINTIFFS have

4  exhausted their administrative remedies by filing timely complaints with the California Civil Rights

5  Department ("CRD"), formerly known as the Department of Fair Employment and Housing

6  ("DFEH"). PLAINTIFFS requested and received "right to sue" letters from CRD as to

7  DEFENDANTS.

8  15.     In accordance with the appropriate regulations, codes, and statutes, PLAINTIFFS have

9  exhausted their administrative remedies by notifying DEFENDANTS of the claims herein.

10  16.     All of the acts alleged herein were in the nature of continuing violations and/or

11  continuing torts. All of the misconduct alleged herein was part of the same continuous pattern of

12  discrimination and harassment, and at least some of the misconduct occurred within three years of the

13  date PLAINTIFFS filed their claims with CRD.

14  **GENERAL ALLEGATIONS**

15  17.     Both PLAINTIFFS Mr. Medrano and Mr. Molina worked as Banquet Captains in the

16  Ritz's Banquets department. As Banquet Captains, they were responsible for supervising the events

17  from start to finish, including setup and breakdown, entering customer charges in the system (such as

18  charges for food and beverages), coordinating with the kitchen staff, supervising service staff, and

19  completing other paperwork related to events.

20  18.     Mr. Medrano began working at the Ritz-Carlton Half Moon Bay in June 2010 and was

21  proud to work at such a highly renowned resort. At the time of his termination, Mr. Medrano was over

22  forty (40) years old. He is also Latino. As such, he is protected under the FEHA based on race, age, and

23  national origin.

24  19.     Mr. Molina began working at the Ritz in 2001 and, like Mr. Medrano, he took his role

25  very seriously.

26  20.     In or about 2017, Ritz-Carlton Half Moon Bay brought in CIANA as a Banquets

27  Manager and quickly promoted him to Director. In his leadership role, CIANA regularly and openly

28  made ageist and racist comments, treated Latino employees differently and worse than white

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   employees, and at times even acted violently toward older Latino employees.

2       21.   CIANA called people "old" and "weak" and told people to "get off their old butts."

3   CIANA also stated that people who had worked for the Ritz the longest made too much money and

4   that he was "going to get rid of all the old people." These comments were made to and about

5   PLAINTIFFS, as well as others.  These discriminatory comments were made openly in the workplace

6   and were known by Defendant's management, who took no effective action to cease this conduct.

7       22.   On one occasion CIANA specifically said, "I'm going to get rid of Tony, Judy and

8   Emilio because they're too old." Many of the staff heard and complained about these comments to

9   Ritz-Carlton management. However, no effective action was taken, and the discriminatory and

10  harassing conduct continued.

11      23.   In addition to mistreating older employees, CIANA subjected Latino workers to

12  adverse employment actions while treating non-Latino workers more favorably. For example, CIANA

13  habitually scheduled non-Latino workers for the preferred shifts, and scheduled Latino workers for

14  morning shifts that required significantly more manual labor and significantly less interaction and

15  facetime with clients. In general, CIANA held Latino workers to a much higher standard than non-

16  Latino workers. He would intentionally assign Latino workers more work than they could possibly

17  complete during their shifts. It was so much work that many perceived it as CIANA's attempt to force

18  Latino workers to quit.

19      24.   On one occasion in 2018, Mr. Medrano requested a new uniform as employees were

20  instructed to do when they needed new clothes to wear to work. CIANA approved the purchase of a

21  new uniform for Mr. Medrano, but then taunted and belittled Mr. Medrano. CIANA said that

22  Mr. Medrano was "decrepit" and a "fat ass" and that if it wasn't for CIANA approving a new uniform,

23  that Mr. Medrano would still be looking "old and shitty." Mr. Medrano politely asked CIANA not to

24  speak to him that way, and CIANA instructed him to "shut the fuck up and stop being sassy."  CIANA

25  told Mr. Medrano that he should be grateful CIANA approved the new uniform. Mr. Medrano spoke

26  with his colleague, Israel Cruz, another Latino man over the age of 40, about what happened. Mr. Cruz

27  had a very similar experience when he requested a new uniform, and asked Mr. Medrano if he would

28  support Mr. Cruz if Mr. Cruz reported the incidents to Human Resources. Mr. Medrano agreed, so

1    Mr. Cruz spoke with HR as well as CIANA's supervisor, Maurice Tax. On information and belief, HR

2    did not record Mr. Cruz's report, conduct any investigation, or admonish CIANA for his cruel and

3    discriminatory behavior.

4         25.     CIANA's discrimination and harassment also limited the access of well-qualified

5    Latino workers to more desirable, higher paying positions. For example, in 2019, Jorge Sanchez, a

6    Black Latino man from Colombia who had been a long-time employee of the Ritz-Carlton, applied to

7    an open position in the Banquets department. Mr. Sanchez had been working in Room Dining and

8    moving to Banquets would have put him in a better position financially. CIANA's "interview" with

9    Mr. Sanchez went as follows: Mr. Sanchez was eating lunch in the employee cafeteria when CIANA

10   approached him. Out of nowhere, CIANA started yelling at Mr. Sanchez. CIANA condescendingly

11   stated that he did not need anyone on his team who was "in it for the money." Rather, CIANA shouted,

12   he needed people with passion. CIANA's behavior toward Sanchez was so deeply disrespectful,

13   inappropriate, and humiliating, that Mr. Sanchez stood up from the table, walked away from CIANA,

14   and withdrew his application from the Banquets department.

15        26.     In addition to the impossible amount of work CIANA assigned to Latino employees,

16   CIANA was heard to complain repeatedly about having to adhere to California law, especially as it

17   pertained to worker protections, suggesting that he did not agree and would not comply with labor law

18   requirements, such as paying mandatory overtime. Moreover, CIANA expressed displeasure with

19   California law pertaining to meal and rest breaks, often telling Latino workers not to take breaks, in

20   violation of California law.

21        27.     In addition, CIANA misused meal break waivers, which were designed to excuse

22   employees when personal emergencies arose and relieve the employer of paying the meal break

23   penalty. Instead, CIANA would require employees to sign these waivers when there was work that he

24   wanted them to complete instead of taking the break to which they were entitled by law. The result

25   was that the Ritz would not have to pay the meal break penalties to its employees. These waivers were

26   signed in the *dozens* in the Banquet department every pay period, at CIANA's insistence. Mr. Molina

27   received emails indicating how many meal break penalties were paid out by each department each pay

28   period.  Based on these emails, it was clear that the restaurant in the lobby, The Conservatory, paid out

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   roughly 20 penalty payments per pay period, as compared to the roughly two penalties paid in the

2   Banquets department. There were fewer workers in The Conservatory than in the Banquets

3   department, and those workers were majority white. Even though there were so many waivers and so

4   few penalty payments issued by the Banquets department, CIANA still complained and asked the

5   employees who received the penalty payments why they had not signed the waivers.

6        28.    CIANA made these adverse employment decisions out of discriminatory animus, as

7   demonstrated by the discriminatory comments CIANA routinely made in the workplace. For example,

8   CIANA loudly and repeatedly complained about staff members making too much money when they

9   "don't even speak English". CIANA insulted the intelligence and skill level of people with accents,

10   making statements including: "Oh! You can write?! What a surprise!" Moreover, CIANA explicitly

11   stated that he would not hire any more Latino workers and that Latino workers made too much money.

12        29.    CIANA's actions toward Latino women was especially disgusting and further reflects

13   the racially discriminatory animus underlying the harassment and adverse employment decisions in

14   which he engaged. When a Latina woman would do something he did not like, such as arrange a sales

15   and catering contract containing terms he did not want to execute, CIANA would call the women

16   "fucking bitches" and grab the nearest table and violently thrust his hips toward it, mimicking sexual

17   violence against these women.

18        30.    On one occasion in particular, at the end of the 2019 holiday season, a Latina woman in

19   her mid-fifties named Lilia Mendez was speaking with CIANA and Kahldon Saeid, CIANA's assistant

20   (who CIANA referred to as "the Indian guy," even though Mr. Saeid was from the Middle East), in

21   one of the offices. As Mr. Medrano and other employees were signing out at the end of the night, they

22   could all hear CIANA screaming at Ms. Mendez. CIANA was being so aggressive toward Ms. Mendez

23   that her coworkers feared CIANA would do something violent to her. Ms. Mendez went with several

24   coworkers to tell the General Manager about what had happened. The GM reprimanded her for not

25   calling the police. He also promised he would look into the incident but never did anything—there was

26   no investigation, no written report, nothing.

27        31.    PLAINTIFFS and other Banquet employees informed CIANA's supervisor, Food and

28   Beverage Director Maurice Tax, of CIANA's racist and ageist mistreatment of them. Initially, upper

1   management encouraged employees whom CIANA treated in a harassing and discriminatory manner

2   to have compassion for CIANA because he was going through a "difficult time" in his personal life.

3   Other than provide excuses for CIANA, it appeared that no other action was taken in response to these

4   complaints. Unsurprisingly, CIANA's illegal behavior continued.

5        32.    On information and belief, several other employees made complaints directly to human

6   resources personnel. On information and belief, no one in Human Resources did any investigation into

7   these complaints. Despite having knowledge of the harassment and discrimination CIANA perpetrated

8   against older Latino employees, it appears that the only step eventually taken by the Ritz was to send

9   CIANA to an anger management class. This action did nothing to protect PLAINTIFFS from

10  CIANA's racially motivated and ageist mistreatment.

11       33.    Over time, CIANA's treatment of older Latino workers became physically violent. On

12  one occasion, CIANA threw a walkie-talkie directly at Mr. Medrano, appearing to aim for his head or

13  chest. Fortunately, CIANA missed Mr. Medrano and the radio crashed to the floor. This occurred after

14  the Beverage Captain, the manager of a team that worked closely with the Banquets team, gave

15  Mr. Medrano instructions with which CIANA disagreed. In his rage, CIANA ranted about how

16  Mr. Medrano, Mr. Molina, and Ms. Wilson were stuck in their old ways and needed to "innovate" if

17  they wanted to keep their jobs – "out with the old way of thinking," he said, and in with the new.

18       34.    Fearing for his safety, the next day Mr. Medrano told CIANA that he was concerned

19  about his own safety and was afraid of CIANA, particularly in light of the workplace shootings that

20  had occurred recently in San Francisco. CIANA's response was threatening and deeply problematic.

21  "I'm not going to shoot you," he stated, "I'm just going to shoot you with bullets of love!"

22       35.    On information and belief, by the end of 2019, CIANA had a direct-report approval

23  rating of less than 50%.  As a result, Mr. Tax met with CIANA's team regularly (without CIANA) to

24  discuss the "morale" issues. At these meetings, employees, including PLAINTIFFS, complained again

25  of CIANA's discriminatory and harassing behavior. Despite receiving further complaints of

26  harassment, discrimination, and threats of violence, DEFENDANT took no action.

27       36.    In March 2020, the State of California issued an order requiring all non-essential

28  workers to remain at home due to the Covid-19 pandemic.  As a result, all of the staff at the Ritz-

Carlton were sent home, including PLAINTIFFS.

37.     In July 2020, PLAINTIFFS were informed that, due to a purported "reorganization," their positions had been eliminated and they would not be brought back to work. In reality, there was no reorganization. Following the termination of PLAINTIFFs, the job responsibilities of "Banquet Captain" (the position previously held by PLAINTIFFS) were assigned to a newly created position called "Banquet Manager."

38.     Defendants never notified Plaintiffs that it had created a new position called "Banquet Manager," despite the fact that Plaintiffs were clearly qualified to perform the duties of that position.

39.     Defendants never offered the position of Banquet Manager to Plaintiffs.

40.     Around that same time, Defendants invited Kimberly (last name unknown), a white woman in her mid-20's, to return to work, and promoted her to the newly renamed Banquet Manager role. For six months prior to Covid-19 impacting California workers, CIANA had repeatedly stated that Kimberly was "the kind of person" he wanted as a banquet captain. Moreover, Defendants hired new employees to work on banquets, all of whom were younger than PLAINTIFFS and were non-Latino individuals.

41.     DEFENDANTS' illegal treatment of Mr. Molina and Mr. Medrano has resulted in significant economic loss and emotional distress.

**FIRST CLAIM FOR RELIEF**
**DISCRIMINATION BASED ON RACE, NATIONAL ORIGIN AND AGE**
**(CAL. GOV. CODE §12940(a))**
**Against all Defendants**

42.     PLAINTIFFS reallege and incorporate by reference the foregoing, as though fully set forth herein.

43.     At all times herein mentioned, California Government Code § 12940, *et seq*., was in full force and effect and was binding upon DEFENDANT. Said sections require DEFENDANTS to refrain from discriminating against employees because of race, national origin and age, among other things.

44.     At all times herein mentioned, PLAINTIFFS were employees protected under the FEHA, Cal. Govt. Code § 12926(c). As such, PLAINTIFFS had the right to maintain employment

without experiencing discrimination on the basis of race, national origin and/or age.

At all times herein mentioned, DEFENDANTS were barred from discriminating in employment

decisions on the basis of race, national origin and/or age.

45.     At all times relevant, PLAINTIFFS were employees of DEFENDANTS.

46.     As described herein, DEFENDANTS discriminated against PLAINTIFFS on the basis

of race, national origin and/or age by subjecting them to disparate treatment in the terms and

conditions of their employment as alleged herein above. PLAINTIFFS' race, national origin and/or

age were a substantial motivating reason for DEFENDANTS discriminating against PLAINTIFFS.

47.     DEFENDANTS also discriminated against PLAINTIFFS by terminating them.

PLAINTIFFS' race, national origin and/or age were a substantial motivating reason for

DEFENDANTS terminating PLAINTIFFS.

48.     The aforementioned conduct of DEFENDANTS constitute a continuing violation of

PLAINTIFFS' rights from the first act to the latest action.

49.     As a direct and proximate result of the discrimination suffered by PLAINTIFFS as

described above, PLAINTIFFS have incurred, and will continue to incur, expenses, loss of deferred

compensation, benefits, earning capacity, wages, opportunities for employment and advancement, and

work experience, all to their damage in an amount according to proof.

50.     As a direct, foreseeable, and proximate result of DEFENDANTS' discriminatory

actions, PLAINTIFFS have suffered and continue to suffer humiliation, embarrassment, mental and

emotional distress and discomfort, all to PLAINTIFFS' damage in an amount in excess of the

minimum jurisdiction of this court, the precise amount to be proven at trial.

51.     DEFENDANTS engaged in conduct with malice, oppression or fraud conducted by one

or more officers, directors or managing agents who acted on behalf of DEFENDANTS.

52.     On information and belief, an officer, director or managing agent of DEFENDANTS

had advance knowledge of the unfitness of CIANA and employment with a knowing disregard for the

safety of others, the conduct constituting malice, oppression or fraud was authorized by one of more of

the officers. Moreover, one or more directors, officers or managing agents of DEFENDANTS, and one

or more officers, directors, or managing agents of DEFENDANTS knew of the conduct constituting

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  malice, oppression or fraud and adopted or approved that conduct after it occurred.  As such, punitive

2  damages are warranted.

3     WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as set forth below.

**SECOND CLAIM FOR RELIEF**
4  **HARASSMENT BASED ON RACE, NATIONAL ORIGIN AND/OR AGE**
**(CAL. GOV. CODE § 12940(j))**
5  **Against all Defendants**

6

7     53.     PLAINTIFFS reallege and incorporate by reference the foregoing, as though fully set

8  forth herein.

9     54.     At all times mentioned in this complaint, Government Code §§12940-12951 were in

10  full force and effect and were binding on defendants. These sections require DEFENDANTS to refrain

11  from harassing any employee on the basis of race, national origin, and age, among other things.

12     55.     At all times relevant, PLAINTIFFS were employees of DEFENDANTS.

13     56.     During the course of PLAINTIFFS' employment, PLAINTIFFS were subjected to

14  harassment, and DEFENDANTS created and allowed a hostile work environment to exist and harassed

15  PLAINTIFFS on the basis of their race, national origin and/or age. Such harassment was in violation

16  of Government Codes §§12940-12951 and the public policy embodied therein and has resulted in

17  damage and injury to PLAINTIFFS as alleged herein.

18     57.     The aforementioned conduct of DEFENDANTS constitute a continuing violation of

19  PLAINTIFFS' rights from the first act to the latest action.

20     58.     As a direct and proximate result of the harassment suffered by PLAINTIFFS as

21  described above, PLAINTIFFS have incurred, and will continue to incur, expenses, loss of deferred

22  compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and

23  advancement, and work experience, all to their damage in an amount according to proof.

24     59.     As a direct, foreseeable, and proximate result of DEFENDANTS' actions,

25  PLAINTIFFS have suffered and continue to suffer humiliation, embarrassment, mental and emotional

26  distress and discomfort, all to PLAINTIFFS' damage in an amount in excess of the minimum

27  jurisdiction of this court, the precise amount to be proven at trial.

28     60.     On information and belief, an officer, director or managing agent of DEFENDANT had

1   advance knowledge of the unfitness of CIANA and employment with a knowing disregard for the

2   safety of others, the conduct constituting malice, oppression or fraud was authorized by one of more of

3   the officers. Moreover, one or more directors, officers or managing agents of DEFENDANTS, and one

4   or more officers, directors, or managing agents of DEFENDANTS knew of the conduct constituting

5   malice, oppression or fraud and adopted or approved that conduct after it occurred.  As such, punitive

6   damages are warranted.

7   WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as set forth below.

8   **THIRD CLAIM FOR RELIEF**
**FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION**
9   **(CAL. GOV. CODE § 12940(k))**
**Against all Defendants**
10

11   61.    PLAINTIFFS reallege and incorporate by reference the foregoing, as though fully set

12   forth herein.

13   62.    At all times mentioned in this complaint, Government Code § 12940(k) was in full

14   force and effect and was binding on DEFENDANTS. Under this section, employers have an

15   *affirmative* duty to prevent harassment in the workplace. Cal. Gov. Code §12940(j)(1)

16   63.    At all times relevant, PLAINTIFFS were employees of DEFENDANTS.

17   64.    As described above, PLAINTIFFS and other employees repeatedly complained about

18   the discrimination and harassment to which CIANA was subjecting his employees.  Despite Defendant

19   having actual knowledge of the discrimination and harassment to which CIANA was subjecting his

20   employees, Defendant failed to take all reasonable steps to prevent harassment, discrimination and

21   retaliation.

22   65.    The aforementioned conduct of DEFENDANTS constitute a continuing violation of

23   PLAINTIFFS' rights from the first act to the latest action.

24   66.    As a direct and proximate result of DEFENDANTS' failure to prevent discrimination,

25   harassment and retaliation, PLAINTIFFS have incurred, and will continue to incur, expenses, loss of

26   deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment

27   and advancement, and work experience, all to their damage in an amount according to proof.

28   67.    As a direct, foreseeable, and proximate result of DEFENDANTS' actions,

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  PLAINTIFFS have suffered and continue to suffer humiliation, embarrassment, mental and emotional

2  distress and discomfort, all to PLAINTIFFS' damage in an amount in excess of the minimum

3  jurisdiction of this court, the precise amount to be proven at trial.

4       68.    On information and belief, an officer, director or managing agent of DEFENDANTS

5  had advance knowledge of the unfitness of CIANA and employment with a knowing disregard for the

6  safety of others, the conduct constituting malice, oppression or fraud was authorized by one of more of

7  the officers. Moreover, one or more directors, officers or managing agents of DEFENDANTS, and one

8  or more officers, directors, or managing agents of DEFENDANTS knew of the conduct constituting

9  malice, oppression or fraud and adopted or approved that conduct after it occurred.  As such, punitive

10  damages are warranted.

11      WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as set forth below.

12  **FOURTH CLAIM FOR RELIEF**<br>**RETALIATION**

13  **(CAL. GOV. CODE § 12940(h))**<br>**Against all Defendants**

14

15       69.    PLAINTIFFS reallege and incorporate by reference the foregoing, as though fully set

16  forth herein.

17       70.    At all times mentioned in this complaint, Government Code § 12940(h) was in full

18  force and effect and was binding on DEFENDANTS. This section prohibits employers from retaliating

19  against employees who engage in a protected activity. Cal. Govt. Code § 12940, *et seq.*

20       71.    At all times relevant, PLAINTIFFS were employees of DEFENDANTS.

21       72.    DEFENDANTS retaliated against PLAINTIFFS by terminating them after they

22  complained of discrimination and harassment.

23       73.    As a direct and proximate result of DEFENDANTS' retaliation against PLAINTIFFS,

24  PLAINTIFFS have incurred, and will continue to incur, expenses, loss of deferred compensation,

25  benefits, earning capacity, wages, opportunities for employment and advancement, and work

26  experience, all to their damage in an amount according to proof.

27       74.    As a direct, foreseeable, and proximate result of DEFENDANTS' actions,

28  PLAINTIFFS have suffered and continue to suffer humiliation, embarrassment, mental and emotional

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    distress and discomfort, all to PLAINTIFFS' damage in an amount in excess of the minimum

2    jurisdiction of this court, the precise amount to be proven at trial.

3          75.    On information and belief, an officer, director or managing agent of DEFENDANTS

4    had advance knowledge of the unfitness of CIANA and employment with a knowing disregard for the

5    safety of others, the conduct constituting malice, oppression or fraud was authorized by one of more of

6    the officers. Moreover, one or more directors, officers or managing agents of DEFENDANTS, and one

7    or more officers, directors, or managing agents of DEFENDANTS knew of the conduct constituting

8    malice, oppression or fraud and adopted or approved that conduct after it occurred.  As such, punitive

9    damages are warranted.

10         WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as set forth below.

11                            **FIFTH CLAIM FOR RELIEF**
     **WHISTLEBLOWER RETALIATION IN VIOLATION OF LABOR CODE § 1102.5**
12                            **Against all Defendants**

13         76.    PLAINTIFFS reallege and incorporate by reference the foregoing, as though fully set

14   forth herein.

15         77.    At all times mentioned in this complaint, California Labor Code § 1102.5 was in full

16   force and effect and was binding on DEFENDANTS. This section broadly prohibits retaliation against

17   an individual for disclosing information concerning the violation of or noncompliance with any state

18   or federal statute.

19         78.    As set forth herein, PLAINITFFS repeatedly reported to CIANA that his conduct was

20   discriminatory, harassing and created a hostile work environment.  Moreover, PLAINTIFFS reported

21   to Maurice Tax, Food and Beverage Director, that CIANA's conduct was discriminatory, harassing

22   and created a hostile work environment.  Plaintiffs also opposed the wage and hour violations.

23         79.    After PLAINTIFFS complained of discrimination, harassment and a hostile work

24   environment, and wage and hour violations, among other things, DEFENDANTS retaliated against

25   PLAINTIFFS by terminating them.

26         80.    As a direct and proximate result of DEFENDANTS' retaliation against PLAINTIFFS,

27   PLAINTIFFS have incurred, and will continue to incur, expenses, loss of deferred compensation,

28   benefits, earning capacity, wages, opportunities for employment and advancement, and work

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   experience, all to their damage in an amount according to proof.

2       81.    As a direct, foreseeable, and proximate result of DEFENDANTS' actions,

3   PLAINTIFFS have suffered and continue to suffer humiliation, embarrassment, mental and emotional

4   distress and discomfort, all to PLAINTIFFS' damage in an amount in excess of the minimum

5   jurisdiction of this court, the precise amount to be proven at trial.

6       82.    On information and belief, an officer, director or managing agent of DEFENDANTS

7   had advance knowledge of the unfitness of CIANA and employment with a knowing disregard for the

8   safety of others, the conduct constituting malice, oppression or fraud was authorized by one of more

9   of the officers. Moreover, one or more directors, officers or managing agents of DEFENDANTS, and

10  one or more officers, directors, or managing agents of DEFENDANTS knew of the conduct

11  constituting malice, oppression or fraud and adopted or approved that conduct after it occurred.  As

12  such, punitive damages are warranted.

13      83.    As a result of DEFENDANTS' unlawful acts, PLAINTIFFS are also entitled to

14  attorneys' fees and costs.

15      WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as set forth below.

16  **SIXTH CLAIM FOR RELIEF**
**REST BREAK VIOLATIONS IN VIOLATION OF WAGE ORDER 5 § 12, *et seq.***

17  **Against all Defendants**

18      84.    PLAINTIFFS reallege and incorporate herein by reference all of the paragraphs of this

19  complaint, inclusive, as though fully set forth herein.

20      85.    Employers must authorize and permit all employees to take a ten-minute rest period for

21  every four hours of work, or major fraction thereof. Wage Order 5 § 12(A); *Brinker Restaurant*

22  *Corp. v. Superior Court*, 53 Cal. 4th 1004, 1029 (an employee must receive one ten-minute rest period

23  for shifts lasting between two and six hours, and two ten-minute rest periods for shifts lasting between

24  six and ten hours).

25      86.    DEFENDANTS violated California's Wage Orders as to PLAINTIFFS by failing to

26  provide them with rest breaks. For each day that DEFENDANTS failed to provide PLAINTIFFS with

27  a required rest period, the DEFENDANTS must pay the employee a rest period premium equal to one

28  hour of pay at the employee's regular rate of pay. Wage Order 5 § 12(B).

87.     As a result of DEFENDANTS' conduct, PLAINTIFFS are also entitled to attorneys' fees under Labor Code Sections 218.5 and 1194, in addition to interest and costs of suit.

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as set forth below.

### SEVENTH CLAIM FOR RELIEF
### MEAL BREAK VIOLATIONS IN VIOLATION OF WAGE ORDER 5 § 12(B)
### Against all Defendants

88.     PLAINTIFFS reallege and incorporate herein by reference all of the paragraphs of this complaint, inclusive, as though fully set forth herein.

89.     Employers must authorize and permit all employees to take a thirty-minute, uninterrupted meal period within the first five hours of an employee's workday. Wage Order 5 § 12(B); *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1042.

90.     DEFENDANTS violated California's Wage Orders as to PLAINTIFFS by failing to provide PLAINTIFFS with a half-hour uninterrupted meal break on each day that they worked in excess of five hours.

91.     For each day that DEFENDANTS failed to provide PLAINTIFFS with a required meal period, the DEFENDANTS must pay the employee a meal period premium equal to one hour of pay at the employee's regular rate of pay. Wage Order 5 § 12(B).

92.     As a result of DEFENDANTS' conduct, PLAINTIFFS' are also entitled to attorneys' fees under Labor Code Sections 218.5 and 1194, in addition to interest and costs of suit.

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as set forth below.

### EIGHTH CLAIM FOR RELIEF
### UNFAIR BUSINESS PRACTICE IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200
### Against all Defendants

93.     PLAINTIFFS reallege and incorporate herein by reference all of the paragraphs of this complaint, inclusive, as though fully set forth herein.

94.     California Business and Professions Code Section 17200, *et seq.,* prohibits unfair competition in the form of any unlawful, unfair or fraudulent business practice.

95.     PLAINTIFFS are persons within the meaning of California Business and Professions Code Section 17200.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

96.     California Business and Professions Code Section 17202 provides:  "Notwithstanding Section 3369 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition."

97.     California Business and Professions Code Section 17203 provides, in relevant part, that the Court may "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

98.     California Business and Professions Code Section 17204 allows any "person who has suffered injury in fact and has lost money or property as a result of such unfair competition to prosecute a civil action for violations of the Unfair Business Practices Act."

99.     Labor Code Section 2810.8 was enacted to protect employees who worked for, *inter alia,* a "Hotel" and were laid off due to the COVID-19 pandemic.

100.    Labor Code Section 2810.8(b)(1) states: "Within five business days of establishing a position, an employer **shall offer** its laid-off employees in writing . . . all job positions that become available . . . for which the laid-off employees are qualified.  A laid-off employee is qualified for a position if the employee held the same or similar position at the enterprise at the time of the employee's most recent layoff with the employer." (emphasis added)

101.    DEFENDANTS laid off PLAINTIFFS from their positions as Banquet Captain, purportedly due to the COVID-19 pandemic.

102.    In or around July 2020, DEFENDANTS hired one or more individuals for the position of Banquet Manager.

103.    On information and belief, PLAINTIFFS were qualified to perform the duties of Banquet Manager.

104.    DEFENDANTS failed to offer the position of Banquet Manger to PLAINTIFFS, in violation of Labor Code Section 2810.8(b)(1).  The violation of Labor Code Section 2810.8(b)(1), as well as the violations of the California Labor Code for meal and rest breaks, and Labor Code Section 1102.5, as set forth herein, serve as unlawful predicate acts and practices for purposes of Business and Professions Code Section 17200, et seq.

105.    The acts described above constitute unfair, unlawful and fraudulent business practices

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

and unfair competition, within the meaning of Business and Professions Code Section 17200, et seq.

106.   The acts and practices described above and herein have allowed DEFENDANTS to gain an unfair competitive advantage over law-abiding employers and competitors.

107.   PLAINTIFFS have been harmed due to the unfair, unlawful and fraudulent business practices and acts of unfair competition of DEFENDANTS.

108.   PLAINTIFFS are entitled to restitution pursuant to Business and Professions Code Sections 17203 and 17208 for all wages and other compensation that they did not receive following their termination.

109.   As a result of the afore-mentioned acts and practices, DEFENDANTS have received and continue to receive ill-gotten gains belonging to PLAINTIFFS.

110.   Pursuant to Section 17203 and/or any other applicable law, PLAINTIFFS seek injunctive relief to prevent DEFENDANTS from engaging in unlawful, unfair and fraudulent conduct, and preventing DEFENDANTS from profiting and benefiting from illegal and wrongful acts.

111.   PLAINTIFFS' success in this action will enforce important rights affecting the public interest.

112.   PLAINTIFFS seek all remedies allowed by law, including but not limited to attorneys' fees, injunctive relief, civil penalties, and restoration of money or property.

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray as follows:

1.   That this court award actual, compensatory, treble, and liquidated damages to PLAINTIFFS for violations of their civil rights under state law;

2.   That this Court award declaratory relief to PLAINTIFFS pursuant to applicable state law;

3.   That this Court award injunctive relief to PLAINTIFFS pursuant to applicable state law;

4.   That this Court award punitive damages to Plaintiffs for every cause of action for which punitive damages are available;

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1       5.      For injunctive relief as permitted by law;

2       6.      That this Court award PLAINTIFFS' reasonable attorneys' fees and costs pursuant to

3  state law, including, but not limited to Cal. Gov. Code § 12965(b), and Labor Code §§ 218.5, 1021.5,

4  1102.5, 1194, and upon any other basis as allowed by law;

5       7.      That PLAINTIFFS be awarded pre-judgment and post-judgment interest on all monies

6  awarded;

7       8.      That PLAINTIFFS be granted all other relief as allowed by law; and

8       9.      That PLAINTIFFS be granted all other relief as the Court may deem just and proper.

9       **PLAINTIFFS DEMAND TRIAL BY JURY.**

10  DATED:  June 20, 2023           Respectfully Submitted,

11                        LEVY VINICK BURRELL HYAMS LLP

12                        LAW OFFICES OF WENDY MUSELL

13

14                        SHARON VINICK

15                        WENDY MUSELL

Attorneys for PLAINTIFFS
ANTONIO MOLINA and EMILIO MEDRANO

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF ALAMEDA

3

      I am over the age of 18 years and not a party to the within entitled action; my business address is 180 Grand Ave., Suite 1300, Oakland, California 94612.

4

5

      On June 20, 2023, I served the foregoing document, described as:

6

- **First Amended Complaint for Damages and Injunctive Relief**

7

on the interested parties to said action, listed below, by the following means:

8

[  ] (By Mail)  By placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Oakland, California, addressed as shown below.

9

[  ] (By Personal Service)  By personally delivering a true copy thereof, enclosed in a sealed envelope, to the addressees shown below.

10

[  ] (By Hand Delivery)  By causing a true copy thereof, enclosed in a sealed envelope, to be delivered by hand to the addresses shown below.

11

[  ] (By Overnight Delivery)  By placing a true copy thereof, enclosed in a sealed envelope, with delivery charges prepaid, to be sent by Federal Express, addressed as shown below.

12

[xx] (Electronic Service)  By authorizing eService through the Electronic Filing Service Provider at the time of submission of documents for filing, to the electronic service addresses provided below.

13

[xx] (By E-Mail): I caused the documents to be sent to the persons at the electronic service addresses listed below.

14

[  ] (By Facsimile Transmission)  By transmitting a true copy thereof by facsimile transmission from facsimile number (510) 318-7701, to the interested parties to said action; the transmission was reported as complete and without error, and a copy of the transmission report, which was properly issued by the transmitting facsimile machine, is attached hereto and incorporated herein by reference. Said documents were transmitted to the interested parties as shown below.

15

16

17

      I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

18

      Executed on June 20, 2023, at Moraga, California.

19

*Gretchen Trupiano*

20

_____

Gretchen Trupiano

21

Monte K. Grix

mgrix@hkemploymentlaw.com

22

Jesse D. Sutz

jsutz@hkemploymentlaw.com,

margueta@hkemploymentlaw.com

23

24

Benjamin Joseph Herold

bherold@hkemploymentlaw.com,

mvera@hkemploymentlaw.com

25

26

27

28